Next matter, number 151506, Small Justice LLC et al. v. Xcentric Ventures LLC, and number 161085, Small Justice LLC et al. v. Xcentric Ventures LLC. Thank you. Mr. Green, good morning. Good morning, your honors. I am Richard Gorin, and I will argue for the appellants. Sorry, I said Green. I didn't have my glasses on when I read. I didn't hear you anyway. I too would also like to request about a minute or two minutes for rebuttal. Well, you have to make up your mind. One or two minutes? I would like to discuss two main points as to why this court must reverse the district court's dismissal of the tort claims on the basis of immunity. First, the Communication Decency Act does not provide a general immunity for all claims that are derived from content created by a third party. Second point, the duty in this case that was breached by Xcentric on what I suggest are the unique circumstances of this case is that of a copyright owner and not a neutral intermediary. Let me try to understand the structure of your claims. If you assumed without conceding that Xcentric acquired an irrevocable, non-exclusive, and non-exclusive right to use what DuPont had created, then do any of your theories survive? Yes. If I understood that correctly, you're talking about the tort claim and or the copyright claims. Is that correct, Your Honor? If what happened here is Xcentric had an irrevocable, non-exclusive license, they got that and they did not get an exclusive license, then which of your theories survives under that scenario? And I understand you may not concede that, but if that were the conclusion, what do we have to do still to get through the rest of your theories? Both claims, both the tort claims and the copyright claims survive. The copyright claim is simpler to explain. The copyright claim does not claim infringement from Xcentric's use of its non-exclusive license. The copyright claim is based on infringement by authorizing Google to publish copies, snapshots taken on Google's server so that Xcentric is the sole content provider. It is based on the copies that are shown. Doesn't virtually every interactive computer service do what you just said Xcentric did vis-a-vis Google or other search engines? No. I believe that what Xcentric has done here is unique. I'm not talking about a website such as the Ripoff Report taking steps to enhance its visibility on the search engines. The complaint on the copyright side, and I'll come back to the tort claims, is that solely pursuant to its purported ownership of copyright, Xcentric authorized or permitted Google to display on its servers, not sending the user who punches in my name back to the Ripoff Report, but shows the copyrighted material of Xcentric. And as to the tort claims, if I assume the court holds that all that it holds in fact is a non-exclusive, bare license, it's still published. But it acted as if it were a copyright owner. So it should be the same as a book publisher. It claimed the copyright, so it didn't have it, but it acted as if it were. Could it have had both things? Is it possible? I just don't know. Could it have had both a non-exclusive license and the copyright? Is that a logical possibility? I think the non-exclusive license would be subsumed within the ownership of the copyright, and a non-exclusive license is actually... Because I'm just trying to figure out, if I understood what you're just saying, is that they were holding themselves out as having a copyright. Yes, you're right. And that was then represented to the public as theirs when the search engines then displayed this page. That's right. And so what I'm trying to figure out is, even if that's true, what is significant about that fact? So one possible thing is that shows that they were holding themselves out. You can use our stuff. You can look at this page, and then the defamatory content would get out to the world, which would be harmful to you. Yes. That would be equally true if they had a non-exclusive license. True. If they have a... It wouldn't show up the same thing, because the words, this is copyrighted to rip off, or whatever, wouldn't appear on the page. They'd have to say something else, like, this is someone else's content, which we have a non-exclusive license to let you show, or something like that. But I don't see why, if that's the difference, you're not harmed by the representation that they have the copyright in it. You might be harmed by actions they take from letting others use it. And then the question just is, well, what was leading them to let other people use it? But if it's a non-exclusive license, we don't have to deal with the copyright issue, right? If it's a non-exclusive license, you still have to deal with the copyright issue. If it were non-exclusive, they wouldn't be able to give someone else the right to publish it, where if... That's correct. If they're saying they are the copyright owner, then the other person's going to think they're getting permission to use it. That's correct. And Google is... When the... I'm not sure I'm being responsive, but let me try. When the user goes to Google and sees the snippet, and if all that Eccentric has is a non-exclusive license, and Eccentric, because of its instructions, its metadata, or what have you, has directed that user on Google, they go back to the Ripoff Report website and read it, that is different. But what Eccentric does is essentially direct, for its own purposes, Google to publish on its servers the libel, the defamatory material. And Eccentric is nothing more than a book publisher republishing the libel. The second point I wanted to make was about the... I think your time is up. Oh, I beg your pardon. You have reserved two minutes. May it please the Court, Counsel? I will handle the and address the Communications Decency Act issue, Your Honors, and then I will turn the podium to Mr. Booth, who will address the copyright issues. As an online review forum, Ripoff Report is the quintessential interactive computer service. Mr. Gorin just said this case was unique. There's nothing unique about this case. But what he's saying is unique, as I understand it, is they're using... They're not only publishing and putting on their site, so if someone comes to their site, you can see it, but they're actually telling Google that Google can republish on its site. And he's saying that's both different, and that's how they're exploiting the representation that they actually have the copyright, because if it was only a non-exclusive license to use, they couldn't give permission to Google to do that. So why isn't that problematic? It's not problematic at all, Your Honor. First of all, this is almost exactly the argument that, or issue, that the Ninth Circuit just looked at just a couple of months ago in Kimsey v. Yelp, and readily and easily opposed that and said that that is not an exception to the CDA. And the reason is simple. What Google chooses to do as part of its business model, which is, in fact, to crawl pages and then make cached copies of pages and show the public the cached copies of pages, it's what Google does with every single website. So what Mr. Gorin would like this Court to think is unique is the way it's done. The only way that Google ever crawls websites is by making its own cached copies. There is an ability for my client to put a do not follow code in its website if it chose to not let Google crawl its website and show its results. But, Your Honor, if no one could see search results, and if no one could find a website, then websites wouldn't exist. But how do you then chart that with the language of the CDA, which simply says no provider or user of an Internet computer service shall be treated as the publisher or speaker of any information provided by another? So that might get Google off. It might get Ripoff off for its use of it. But when Ripoff tells Google that Google can publish it, why doesn't Ripoff, in effect, become the provider? Well, Ripoff does not ever become... As I understand it, the theory is that what Ripoff is doing is saying, this is mine now, I have the exclusive copyright, and Google, you can publish it. And I can read the statute to say Google's okay. But the statute doesn't exonerate the provider. Because the information content provider is Christian DuPont, and Christian DuPont created that information. Sure, but why can't you have several providers? In other words, he provided, as I understand the theory is, he creates it, he provides it to Ripoff, Ripoff can then use it, post it, but Ripoff then claims, now I actually own it, and I'm providing it to Google. But whether or not Eccentric claims they own it is a completely different issue. When Eccentric allows, and doesn't really provide it to Google, allows Google to then republish it, no matter how many times a website republishes something, and this is exactly what the Ninth Circuit said in Kimsey, that does not make them the provider of the content. And why do you say they don't provide it to Google? If I know someone comes around every day to collect something off people's front porch, and I put something out on the front porch, I'm providing it to them. Aren't they doing that in electronic terms? Yes. The provider is defined as the information content provider as the person responsible for the creation, the creation of the defamatory content, not the republication. Doesn't that read the word provider out? I'm sorry? Doesn't that read the word provider out of the CDA? What's the word provider doing then? The information content provider is defined as the person who is responsible for creating it. I forget what the text. I'm sorry? I thought that was the word create not in the CDA? The person responsible for creating is in the definition of the information content provider. So we've got the two tiers. We've got the information content provider, which is then defined as the person who is responsible for creating the content, which is Christian DuPont. So he creates the content. He's the provider. He's the only information content provider. He's the only person responsible for creating the very content that Mr. Goring claims is defamatory. Then if Eccentric allows Google to republish that, it makes absolutely no difference. Republishing cannot make them the information content provider is my point. I want to make sure I'm not stepping on Mr. Bustos on the copyright issue, but I guess that's my timer, right? That's not both of our timers. Okay. So Mr. Goring's theory is as the copyright owner, we can't. His other theory is that as the copyright owner, we can't have CDA immunity. No court has ever determined that, and it confuses copyright issues with communications decency issues, which Mr. Goring continues to do, but those are two totally separate issues. And I am going to yield the podium to Mr. Booth, Your Honors. Thank you. Good morning, Ms. Booth. Good morning. Thank you. May it please the Court, this case was won on the merits, on the copyright claims, and on all litigated claims. There were two primary grounds on which the copyright accounts were dismissed. First, there was a non-exclusive irrevocable license granted to Eccentric Ventures that gave it absolute permission to do exactly what it did. And second, there was no ownership at any point. Eccentric Ventures had no plaintiff who challenged its right to use the copyrights who had standing to do so under the Copyright Act. Essentially, Attorney Goring was aware that the CDA prevents all claims other than intellectual property claims or criminal claims, and so he built a copyright case to get around the CDA, doing so on the basis of a void default judgment and an involuntary transfer that he acquired through that void judgment. There's no basis for any of that, and none of that gave him any valid right under the Copyright Act. As a result, we have multiple grounds for affirming this case on the copyright claims, and this left no abuse of discretion when the judge decided fees should be awarded for this case. This is a case where, when you've got a case that is so questionable, when you've got a case where there is no basis for bringing it, on the merits, this case should not go forward, it should not have been brought, and the court was correct in so finding. Well, hasn't this helped clarify what is a pretty sneaky trick on the exclusive copyright license of burying it on the page without any clear direction that you're going to get there? Doesn't this case perhaps help? I mean, we've got Namika saying that your client's practice is no good. We do, and to be clear, my client is, Excedric is not here contending that the copyright, and has never contended that the copyright that it held prevented Mr. DuPont from republishing his work anywhere else. Well, it did purport to take an exclusive copyright. And so what the district court found, quite rightly, is that Section 204 requires a writing for a copyright assignment to go forward. So your client lost that. Effectively. So it was good this suit was brought. There's a distinction, though. Excedric still holds the copyright in the collective work that is published on its website. That's what its registration is for. That's different from holding the copyright for any individual work. And so was that clarified? Perhaps. That was clarified not as a result of what Mr. Gorin did. That was clarified as a result of what Excedric did. Even that clarification wouldn't be grounds for overturning the copyright fees judgment as an abuse of discretion. But, yes, there was a difference. And that clarification, as well as the clarification about how involuntary transfers are barred, that's critical. And that's the primary holding here. So on those grounds, it's a great thing that this case has happened because it lets everyone know that this is squarely outside of the realm of what a plaintiff can do. If there are no further questions. Thank you, Your Honor. Thank you. Mr. Gorin. Thank you. First, on the immunity, these are unique circumstances. As the amici pointed out, this is perhaps the only, quote, neutral platform that claims a copyright. What do you say about the argument that Excedric cannot be deemed to be an information content provider because it didn't either create or develop the information here? It's one that can be more than one content provider. And on the publication, on the ripoff report website, there were two. That is, Mr. DuPont, who typed the words onto his laptop or whatever, and then it was Excedric, under its own ownership of the copyright and its basic law that if you own all the exclusive rights of copyright, you decide whether or not to make the first publication. But explain to me precisely how you're saying Excedric either created or developed the information. If it's limited to developing in terms of putting pen to paper, I have no argument. It's the development of the wrongdoing. No, no, no. How did it create or develop the information in a way that every Internet service provider doesn't do something in order to do what it does? Because it's no longer acting as a neutral intermediary. It's publishing its own speech. It says, I own this. I am the copyright owner. But how is that use of the verb create or develop in a sentence to describe what they did? It is the development of, it is the action by which the wrongdoing occurs. May I briefly respond on copyright? In this court's de novo review, it should hold that small justice holds the exclusive rights of copyright. And the court need not write on the tabula rasa of section 201E on which the district court relies because the jurisdictional predicate in this case was an assignment by the author's court appointed attorney in fact and the registration that gets you into this court states by written assignment. And in all events, 201E is not implicated and the district court respectfully got it wrong. Thank you. Thank you.